# IN THE COURT OF APPEALS OF IOWA

No. 23-1797
Filed January 24, 2024

**IN THE INTEREST OF W.E. and N.H.,**
**Minor Children,**

**M.V., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Ellen Ramsey-Kacena, Assistant Public Defender, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Julie Gunderson Trachta, Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights. We find termination of the mother's parental rights is in the children's best interests and an extension of time to work on reunification is unwarranted. We affirm the termination of the mother's parental rights.

### I.    Background Facts & Proceedings

M.V. is the mother of N.H.,[1] born in 2011, and W.E., born in 2020. The parental rights of R.E., the father of W.E., were terminated in 2021.[2] At the time of the earlier termination, the mother was separated from the father, but she reunited with him in February 2022. She stated she believed the father should have a relationship with the children despite the termination of his parental rights to W.E.

The Iowa Department of Health and Human Services (HHS) became involved with the family again in April because of allegations that the father physically abused the mother in the presence of the children. There was also a concern the mother was drinking to excess and not caring for the children. N.H. reported the father struck the mother in the past. The mother had observable injuries. The children were adjudicated to be in need of assistance (CINA).

In August, the mother tested positive for amphetamines. On September 27, N.H. had a mental health crisis at school. He said the father had moved back into the home, and the father and mother were arguing and fighting. The mother would

---

[1] The father of N.H., R.H., did not participate in services. His parental rights were terminated in this proceeding. He has not appealed.
[2] For the sake of simplicity, we will refer to R.E. as the father, although he is not the biological father of N.H.

not let a social worker enter the home. The children were then removed from the parents' custody. A hair test of W.E. was positive for methamphetamine. The children were placed in the same foster home where they lived during the earlier CINA case leading to the termination of the father's parental rights.[3]

The mother continued her relationship with the father. In November, she emailed social workers pictures of black eyes given to her by the father. She obtained a no-contact order. Based on the mother's progress, she was able to have semi-supervised visits.

The mother tested positive for methamphetamine in May 2023. Throughout the case she did not appear for a majority of the requests for drug testing. In June, the mother met with the father. They had an argument while she was driving. The mother punched the father in the face and broke his nose. She was charged with domestic abuse assault and the father was charged with contempt for violating the no-contact order. The mother's visits returned to fully supervised.

The State filed petitions to terminate the mother's parental rights to the children. A termination hearing was held on October 16. The mother testified she was living with the father and expecting another child with him. She stated the father was no longer using illegal drugs and she believed he would not engage in domestic violence. The mother testified the children were in a better place with the foster parents than she could provide for them. She asked, however, for more time to work on reunification.

---

[3] Later, the children were moved to a different foster home. At the time of termination, the children were placed together in a foster home willing to adopt the children.

The court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) (2023) for N.H. and (h) for W.E. The court found termination of the mother's parental rights was in the children's best interests. The court did not apply any of the exceptions to termination found in section 232.116(3). The court denied the mother's request for an extension of time. The mother appeals.

## II.      Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the children. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, we consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.* But when the parent does not raise a claim relating to any of the three steps, we do not address them and instead limit our review to the specific claims presented. *See id.* at 40 (recognizing we do not consider a step the parent does not challenge).

### III. Best Interests

The mother claims termination of her parental rights is not in the children's best interests.[4]  She points to recent positive changes, including sobriety and involvement in a church.  She also asserts that her relationship with R.E. has improved for the same reasons.

In considering the best interests of a child, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child under section 232.116(2)."  *P.L.*, 778 N.W.2d at 41.  "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *Id.*

On the issue of best interests, the district court stated:

> It is in these children's best interest for termination of parental rights to occur.  They have been out of parental care for over a year in the current case.  They were removed from parental care in [the case involving the father] for a period of time earlier.  It is time that the revolving door of exposure to domestic violence and substance use in their mother's care, and removal by the courts, ends.  They need and deserve a stable, sober, and violence free existence in a home where their needs are put first.  History indicates that they will not get that from their mother.

Throughout the case the mother pursued her relationship with R.E., which involved domestic violence, to the detriment of the children.  As recently as June 2023, the mother and father had an argument where she struck him and broke his

---

[4] The mother does not dispute that the State presented clear and convincing evidence to support termination of her parental rights under section 232.116(1)(f) and (h).

nose, resulting in a charge of domestic abuse assault. The continued domestic violence in the home has caused the oldest child to engage in problematic, aggressive behavior at school.

Nor has the mother addressed her substance-abuse problems. At the time of removal, the youngest child's hair tested positive for methamphetamine. The mother tested positive for amphetamines in August 2022 and methamphetamine in May 2023. The mother did not participate in requested drug testing during most of the case. There was no evidence the mother had completed a substance-abuse treatment program. We conclude that termination of the mother's parental rights is in the children's best interests.

### IV. Extension of Time

While the mother testified the children could not be returned to her custody at the time of the termination hearing, she requested an extension of time to work on reunification with the children. She claims she has been sober since November 2022 and the father has been sober since he was released from jail in June 2023. She also asserts there have been no incidents of domestic violence since June 2023. She asks for an additional six months to show she and the father could safely care for the children.

A six-month extension of time may be granted under sections 232.104(2)(b) and 232.117(5) if parental rights are not terminated following a termination hearing. *In re D.P.*, No. 21-0884, 2021 WL 3891722, at *2 (Iowa Ct. App. Sept. 1, 2021). An extension of time may be granted if the court "determin[es] that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005)

(quoting Iowa Code § 232.104(2)(b)). "The judge considering [the extension] should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *Id.* (citation omitted).

A social worker testified that nothing would change if the mother was given more time. The worker noted that when the mother is involved with the father, she does not consider the children's safety. The court found the mother was not credible, particularly about her relationship with the father. The mother also has not been truthful about her use of illegal substances. Here, she argues she has been sober since November 2022, although she tested positive for methamphetamine in May 2023.

We conclude an extension of time is unwarranted in this case as it is not likely the children could be returned to the mother's custody within six months. *See id.* The issues that caused HHS to become involved, domestic violence and substance abuse, are still present. It is unlikely the mother would be able to resolve these issues within six months because rather than address them, she has continued to deny the problems exist.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**